Submitted June 9, 2015; award of temporary disability benefits for the period June 21, 2011 through September 28, 2011, reversed and remanded; otherwise affirmed November 30, 2016

In the Matter of the Compensation of
Murry Nacoste, Jr., Claimant.

THE HALTON COMPANY - HALTON CO.,
*Petitioner,*

*v.*

Murry NACOSTE, Jr.,
*Respondent.*

Workers' Compensation Board
1301056, 1300653; A155960

387 P3d 415

Daniel L. Meyers and Brad G. Garber filed the briefs for petitioner.

Julene M. Quinn filed the brief for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Tookey, Judge.

## HADLOCK, C. J.

The question in this workers' compensation case is whether the Workers' Compensation Board erred in concluding that claimant is entitled to compensation for temporary partial disability from June 21, 2011 to September 28, 2011. In reviewing the board's order for substantial evidence and errors of law, ORS 656.298(7); ORS 183.482(7), (8), we conclude that the board erred and we therefore reverse and remand the award.

The facts are largely undisputed, and we draw them from the board's order and the medical record. Claimant suffered a compensable knee injury in 2008, and employer accepted a claim for a right knee medial meniscus tear. Claimant chose not to undergo surgical repair at that time, and he was treated with medication, a knee brace, and injections. The claim closed by a notice of closure in early 2009, with an award of two percent whole person impairment for loss of right knee range of motion.

Claimant continued to suffer knee pain. He returned to his doctor, who recommended surgery to repair the meniscus and, in March 2011, authorized modified work.[1] Claimant filed a claim for aggravation of the original injury, which employer denied on June 21, 2011, reasoning that claimant's condition had not changed since the 2009 claim closure. But in its letter to claimant denying the aggravation claim, employer wrote, "Please note that once you have undergone repair of the [medial] meniscus tear in your right knee, we will voluntarily reopen your claim for aggravation at that time."[2]

---

[1] Claimant's attending physician continued to authorize time loss through May 2012, when claimant's physician deemed him medically stationary.

[2] The letter stated, in substantive part:

"After review of your request for aggravation reopening we must hereby deny your aggravation claim for the following reason(s):

"Pursuant to ORS 656.273, after the last award or arrangement of compensation, an injured worker is entitled to additional compensation for worsened conditions resulting from the original injury. ***

"The medical information in your file reflects that your symptoms and objective findings have been unchanged since the Notice of Closure issued in February of 2009. Further, the need for repair of the meniscus tear is also unchanged.

Claimant challenged employer's denial of the aggravation claim. An ALJ upheld the denial and awarded claimant interim compensation on the aggravation claim from March 2011 until the date of the denial—June 21, 2011.[3] The board issued an order upholding that denial in March 2013.[4]

In the meantime, on September 28, 2011, claimant's physician performed a partial medial meniscectomy on claimant's right knee. Beneath the torn meniscus, the doctor found "an area of grade 3 chondromalacia of the tibial plateau," a wearing away of the cartilage secondary to a right medial meniscus tear. Claimant subsequently filed a new/omitted medical condition claim for right knee chondromalacia of the tibial plateau. Employer issued a notice accepting the claim in June 2012.[5] Employer closed the claim for right knee chondromalacia of the tibial plateau on September 12, 2012, after claimant's physician determined (in May 2012) that claimant's medial meniscus tear and degenerative changes, including chondromalacia, were medically stationary.

Upon closing that claim, employer awarded claimant temporary disability benefits from September 28, 2011 through September 12, 2012; nine percent whole person impairment; and 15 percent work disability. The updated

---

"The denial is based, in part, upon the opinions of an independent medical examiner. Your attending physician * * * has agreed with the opinions expressed by the independent medical examiner.

"Without waiving any other potential defenses, Pinnacle Risk Management Services respectfully denies your aggravation claim.

"Please note that once you have undergone repair of the [medial] meniscus tear in your right knee, we will voluntarily reopen your claim for aggravation at that time. In addition, all medical bills related to your right knee medial meniscus tear are being honored under the palliative care rules."

[3] "Interim compensation" is a judicially created term for temporary disability compensation that must be paid pursuant to ORS 656.262 within 14 days of the employer's knowledge of a claim, pending acceptance or denial of the claim. *Jones v. Emanuel Hospital*, 280 Or 147, 152, 570 P2d 70 (1977).

[4] We affirmed the board's order in *Nacoste v. Halton Co.*, 275 Or App 600, 365 P3d 1098 (2015).

[5] The modified notice of acceptance stated, "Your claim was previously accepted as a medial meniscus tear of the right knee. Based upon a review of the information in your file, we are modifying your acceptance. Your claim is now accepted for right knee chondromalacia of the medial tibial plateau."

notice of acceptance listed the accepted conditions as "medial meniscus tear of the right knee and right knee chondromalacia of the medial tibial plateau."

Claimant requested reconsideration, seeking additional temporary disability benefits. Limiting its consideration to the new/omitted medical condition claim of chondromalacia, the Appellate Review Unit (ARU) awarded claimant time loss from the day in March 2011 on which claimant's physician had authorized modified work through the day in May 2012 on which claimant's physician determined he was medically stationary.[6]

Employer challenged the award of benefits for the period of June 21, 2011 through September 28, 2011. An ALJ and the board upheld the award. But unlike the ARU and the ALJ,[7] the board did not connect claimant's time loss benefits to the chondromalacia. The board explained that, because it had not been identified as of the time of the authorizations, the chondromalacia could not provide a basis for the award. Nevertheless, the board concluded that claimant was entitled to benefits for temporary disability based on an accepted aggravation of the medial meniscus tear. The board found that, although employer had initially denied an aggravation claim for that condition, employer's reopening of the claim in June 2012 encompassed an acceptance of an aggravation of the medial meniscus based on the September 28, 2011, surgery.[8] That voluntary reopening, the board reasoned, gave rise to an entitlement to temporary disability for the period during which claimant's attending physician

---

[6] The term "time loss" is not defined in ORS chapter 656. However, it is often used, in the workers' compensation context as a shorthand reference to temporary disability benefits (or to the payment of, or entitlement to, those benefits). *See, e.g., Scott v. Liberty Northwest Ins. Corp.*, 268 Or App 325, 327, 341 P3d 220 (2014) (equating "benefits for temporary disability" with "time loss").

[7] The ALJ stated, "Simply put, this record does not contain an accepted aggravation claim."

[8] In support of its finding that the notice encompassed an acceptance of an aggravation claim, the board cited employer's letter to claimant stating that it would voluntarily accept an aggravation claim after claimant's surgery, employer's payment of disability benefits as of the date of the surgery, and employer's payment of permanent impairment based on the surgery. The board said that "[t]ogether, these documents support the proposition that the claim was reopened for both an aggravation of claimant's previously accepted right knee meniscus tear and a new/omitted chondromalacia condition."

had authorized time loss for the medial meniscus. The board further found that, in releasing claimant for modified work from March 2011 through September 27, 2011, claimant's physician had authorized time loss for the medial meniscus tear.

On judicial review, employer challenges the board's determination. ORS 656.212 provides for payment of temporary partial disability benefits when a worker suffers temporary partial disability as a result of a compensable injury, as authorized by the worker's attending physician. ORS 656.262(4).[9] Employer contends that the additional time loss awarded by the board is not available for either the medial meniscus tear or the chondromalacia, and we agree. Employer had denied claimant's aggravation claim for the medial meniscus tear, and an ALJ and the board

_____

[9] ORS 656.262(4) provides, in part:

"(a) The first installment of temporary disability compensation shall be paid no later than the 14th day after the subject employer has notice or knowledge of the claim, if the attending physician or nurse practitioner authorized to provide compensable medical services under ORS 656.245 authorizes the payment of temporary disability compensation.

"* * * * *

"(d) Temporary disability compensation is not due and payable for any period of time for which the insurer or self-insured employer has requested from the worker's attending physician or nurse practitioner authorized to provide compensable medical services under ORS 656.245 verification of the worker's inability to work resulting from the claimed injury or disease and the physician or nurse practitioner cannot verify the worker's inability to work, unless the worker has been unable to receive treatment for reasons beyond the worker's control.

"* * * * *

"(g) Temporary disability compensation is not due and payable pursuant to ORS 656.268 after the worker's attending physician or nurse practitioner authorized to provide compensable medical services under ORS 656.245 ceases to authorize temporary disability or for any period of time not authorized by the attending physician or nurse practitioner. No authorization of temporary disability compensation by the attending physician or nurse practitioner under ORS 656.268 shall be effective to retroactively authorize the payment of temporary disability more than 14 days prior to its issuance.

"(h) The worker's disability may be authorized only by a person described in ORS 656.005(12)(b)(B) or 656.245 for the period of time permitted by those sections. The insurer or self-insured employer may unilaterally suspend payment of temporary disability benefits to the worker at the expiration of the period until temporary disability is reauthorized by an attending physician or nurse practitioner authorized to provide compensable medical services under ORS 656.245."

had upheld that denial and awarded interim disability benefits to which claimant was entitled on that denied claim—time loss for the period between the filing of the claim and employer's denial on June 21, 2011. *See* ORS 656.262(4)(a) (describing an employer's obligation to pay time loss at the outset of claim during period for which there is authorization, pending acceptance or denial of the claim). At the time the board issued its order in this case in December 2013, a petition for judicial review of the March 2013 order denying the aggravation claim was pending in this court, and employer continued to assert that the aggravation claim was not compensable. To the extent that the documents relied on by the board support a finding that employer nonetheless voluntarily accepted an aggravation claim in June 2011 (a finding that employer does not dispute), the documents support a finding of an acceptance only as of the date of the September 2011 surgery, not before. Employer's statement in its letter denying the aggravation claim that it would voluntarily reopen the claim after claimant's surgery ("[W]e will voluntarily reopen your claim for aggravation at that time[.]") can reasonably be viewed only as stating an expectation that the surgery itself would provide the basis for an aggravation—not as an acceptance of an aggravation as of June 21, 2011, the date the claim was denied. Indeed, in its order on review, the board said that it was required to determine "whether the employer's claim reopening also included an aggravation of the medial meniscus tear based on the September 28, 2011, surgery." The board's finding that employer had accepted an aggravation claim *as of the date of the surgery* does not support an award of temporary disability benefits for the period before the surgery during which the claim was in denied status (a denial that the board upheld in an order that we affirmed). Thus, it could not support an award of time loss for the period of June 21, 2011 to September 28, 2011.

We also reject claimant's contention that there was medical authorization of temporary disability benefits for the new/omitted medical condition claim of chondromalacia for the period June 21, 2011 to September 28, 2011. Although the ARU based its award of time loss on the chondromalacia, the board did not, with good reason. There is no evidence of

an authorization of time loss for that claim before the date of the surgery. It is true, as claimant contends, that the statutes do not require that a physician's authorization of temporary disability benefits relate to a specific diagnosis. But the authorization must relate to a compensable condition. ORS 656.212; *see Scott v. Liberty Northwest Ins. Corp.*, 268 Or App 325, 330, 341 P3d 220 (2014) (describing two periods during which an entitlement to temporary disability benefits may arise, in addition to any interim compensation period, both of which relate to accepted claims that have not yet been closed); *Webb v. Glenbrook Nickel Co.*, 189 Or App 251, 256, 75 P3d 459 (2003) (duty to pay benefits was not triggered by authorization of time loss for a condition that was not compensable). As the board correctly stated, an authorization of time loss is not effective as to a denied condition. *See* ORS 656.262(4)(g). The presurgery authorizations provided by claimant's attending physician were directed to the medial meniscus tear, which had been denied and for which no compensation was due before September 28, 2011. The board therefore erred in awarding temporary disability benefits for the period June 21, 2011 through September 28, 2011.

Award of temporary disability benefits for the period June 21, 2011 through September 28, 2011, reversed and remanded; otherwise affirmed.